

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-16-00007-CR

JUNIOR LEE JOHNSON                                              APPELLANT

V.

THE STATE OF TEXAS                                                      STATE

----------

## FROM THE 432ND DISTRICT COURT OF TARRANT COUNTY
## TRIAL COURT NO. 1374064D

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

Pursuant to a plea bargain, Appellant Junior Lee Johnson pleaded guilty to assault on a family member. *See* Tex. Penal Code Ann. § 22.01(a), (b)(2)(A) (West Supp. 2016). In accordance with the terms of the plea bargain, the trial court deferred a finding of guilt, placed Johnson on two years of deferred

---

[1]*See* Tex. R. App. P. 47.4.

adjudication community supervision, and assessed a $200 fine. His conditions for community supervision required, among other things, that he not commit any further offenses and that he not contact the victim—his estranged wife, Ira[2]—in a harmful or injurious manner. The State subsequently filed a petition to proceed to adjudication, alleging that Johnson had violated those conditions of his community supervision. Johnson pleaded not true to the allegations, and the trial court, after conducting an adjudication hearing, found that the allegations were true, adjudicated Johnson's guilt, and sentenced him to seven years' confinement. In two issues, Johnson contends that a recording of a 9-1-1 call should not have been admitted at the adjudication hearing (his first issue) and that without the recording of the 9-1-1 call the evidence is insufficient to prove that he violated the conditions of his community supervision (his second issue). Because—assuming without deciding that the trial court abused its discretion by admitting the recording of the 9-1-1 call and excluding it from our review of the evidence—the evidence is nonetheless sufficient to prove that Johnson violated a condition of his community supervision, we will affirm the judgment of the trial court.

---

[2]At various times in the record, Ira's last name is stated as "Johnson," "Linen," and "Linen-Johnson." For ease of reference, we will refer to her simply as "Ira."

## II. BACKGROUND

On January 20, 2015, Ira and Johnson were married but living apart. Ira testified that on that date she called the police three times. The first phone call originated in the morning after her bedroom window was broken. Ira did not see who broke the window. The second call was placed in the afternoon after Johnson kicked her door and shouted, "Come get your son. Come get your things."[3]

Ira testified that after Johnson kicked her door, she drove to his house to pick up her adult son, who was visiting Johnson. She testified that she parked across the street from Johnson's house, rather than directly in front of it, because she wanted to avoid a confrontation. According to Ira, she sat in the vehicle with the motor running and Johnson approached it, cussed at her, and said, "I'm going to kill you." Ira testified that she told Johnson, "Please do not come towards my car, leave me alone, let me just pick up my son." Ira stated that she then "[moved] up a little further [with her] car," an action that caused Johnson to become angrier.

Ira then called 9-1-1 for the third time that day.[4] Ira testified that Johnson then got in his vehicle, and as she was trying to drive away from him, Johnson

---

[3]Ira testified that she knew it was Johnson kicking her door because she recognized his voice.

[4]It is the admission of the recording of this third 9-1-1 call at the adjudication hearing that Johnson complains of in his first issue. We assume,

struck her vehicle from behind.[5]  According to Ira, a chase then ensued.  She testified that her vehicle was struck head-on by Johnson's vehicle during the chase.  Ira stated that after the head-on collision she backed up and drove around Johnson's vehicle.  Johnson then gave chase, eventually striking her vehicle a third time, with the front of his vehicle hitting the back of hers.

In response to Ira's third 9-1-1 call, Officer James Parsons of the Fort Worth Police Department was dispatched to the scene.  When Officer Parsons arrived at the scene, he made contact with Johnson.  Officer Parsons testified that Johnson told him that Ira had come to the house to pick up her son and that Johnson and Ira began arguing while the son was gathering his things.  Officer Parsons testified that Johnson told him that he was upset and that he had rammed Ira's vehicle to block her from leaving.  Officer Parsons further testified that Johnson admitted that what he did was wrong.  Officer Parsons inspected Johnson's vehicle and observed damage to the front end.  He also observed debris at the site where Ira claimed the head-on collision occurred.

Officer Parsons then went to Ira's apartment to speak with her because she had left the scene.  Ira told Officer Parsons that she was sore, but she declined his offer to call for an ambulance.  Officer Parsons observed "[m]ajor

---

without deciding, that the trial court abused its discretion by admitting this recording and we exclude its contents from our factual recitation here.

[5]Ira described the contact from this first collision as "soft."

4

damage to the front end and minor damage to the rear" of Ira's vehicle.[6] After speaking with Ira, Officer Parsons went back to Johnson's home and placed him under arrest. Johnson was taken to the city jail, read his *Miranda* rights, and given the opportunity to make a written statement. Johnson made a written statement in which he averred, "I did not do anything wrong. She hit me and I hit her car." Officer Parsons testified that when he first made contact with Johnson, Johnson did not say anything about Ira hitting him.[7]

Ira testified that she had a "splitting headache" as a result of the collisions and that she eventually went to the hospital and was treated for a concussion. The trial court ultimately found that Johnson violated the conditions of his community supervision by committing a new offense—assault with a deadly weapon—and by making contact with Ira in a harmful or injurious manner.

---

[6]At the adjudication hearing, the State introduced several photographs showing significant damage to the front of Ira's vehicle and minor damage to the rear of her vehicle. Ira testified that the damage depicted in the photographs occurred on January 20, 2015, as a result of Johnson striking her vehicle with his vehicle. She further testified that her vehicle was declared a total loss by her insurance company.

[7]Johnson's community-supervision officer testified at trial that Johnson told her that his vehicle collided with Ira's vehicle as he was leaving his house and as Ira was approaching his house. Johnson's sister testified that Johnson told her that the collision was an accident and that his vehicle and Ira's vehicle "just happened to ram into each other."

### III. ADJUDICATION OF GUILT

In his second issue, Johnson contends that without the recording of the 9-1-1 call the evidence is insufficient to prove that he committed assault with a deadly weapon or made contact with Ira in a harmful or injurious manner.

### A. Standard of Review

A trial court's determination on a motion to adjudicate is reviewable in the same manner as the determination on a motion to revoke community supervision. *See* Tex. Code Crim. Proc. Ann. art. 42.12, § 5(b) (West Supp. 2016). We review an order revoking community supervision under an abuse-of-discretion standard. *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006); *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984). In a revocation proceeding, the State must prove by a preponderance of the evidence that the defendant violated the terms and conditions of community supervision. *Cobb v. State*, 851 S.W.2d 871, 873 (Tex. Crim. App. 1993). The trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony, and we review the evidence in the light most favorable to the trial court's ruling. *Cardona*, 665 S.W.2d at 493; *Garrett v. State*, 619 S.W.2d 172, 174 (Tex. Crim. App. [Panel Op.] 1981). If the State fails to meet its burden of proof, the trial court abuses its discretion in revoking community supervision. *Cardona*, 665 S.W.2d at 493–94.

Proof by a preponderance of the evidence of any *one* of the alleged violations of the conditions of community supervision is sufficient to support a

6

revocation order. *Moore v. State*, 605 S.W.2d 924, 926 (Tex. Crim. App. [Panel Op.] 1980); *Sanchez v. State*, 603 S.W.2d 869, 871 (Tex. Crim. App. [Panel Op.] 1980). Consequently, when there is one sufficient ground, we do not need to address the other contentions. *See Sanchez*, 603 S.W.2d at 871; *Long v. State*, No. 02-12-00090-CR, 2013 WL 1337975, at *2 n.7 (Tex. App.—Fort Worth Apr. 4, 2013, pet. ref'd) (mem. op., not designated for publication).

### B. The Evidence is Sufficient to Support a Finding that Johnson Made Contact with Ira in a Harmful or Injurious Manner

As stated above, one of the conditions of Johnson's community supervision was that he not make contact with Ira in a harmful or injurious manner. Here, there was evidence—apart from the recording of the 9-1-1 call— that Johnson made contact with Ira in a harmful or injurious manner. Ira testified that Johnson chased her vehicle with his and struck her vehicle three times. Officer Parsons also testified that Johnson told him that he had rammed Ira's vehicle to block her from leaving and admitted that what he did was wrong. Officer Parsons observed damage to the front of Johnson's vehicle, and he also observed "[m]ajor damage to the front end and minor damage to the rear" of Ira's vehicle. Photographs admitted into evidence confirm this damage, and Ira testified that the damage to her vehicle was caused by Johnson. Ira also testified that she had a "splitting headache" as a result of the collisions and that she went to the hospital and was treated for a concussion.

7

While Johnson presented contrary evidence to suggest that the collisions were either an accident or caused by Ira, the trial court, as the sole judge of the credibility of the witnesses and the weight to be given to their testimony, was within its discretion to find the testimony of Ira and Officer Parsons credible while finding Johnson's contrary statements not credible. *See Cardona*, 665 S.W.2d at 493; *Garrett*, 619 S.W.2d at 174. Viewing the evidence in the light most favorable to the trial court's ruling, and deferring to the trial court on questions of the credibility of witnesses and the weight to be given their testimony, we hold that the trial court did not abuse its discretion in finding that the State proved by a preponderance of the evidence that Johnson made contact with Ira in a harmful or injurious manner, a violation of the conditions of Johnson's community supervision.[8] We overrule Johnson's second issue.

Having determined that—even eliminating the recorded 9-1-1 call from our analysis—the trial court did not abuse its discretion in finding that the State proved by a preponderance of the evidence that Johnson made contact with Ira in a harmful or injurious manner in violation of the conditions of Johnson's

---

[8]Because we hold that the trial court did not abuse its discretion in adjudicating guilt based on Johnson's contact with Ira that was in a harmful or injurious manner, we do not address the other ground for adjudicating guilt, namely whether Johnson committed assault with a deadly weapon. *See* Tex. R. App. P. 47.1; *Moore*, 605 S.W.2d at 926; *Sanchez*, 603 S.W.2d at 871; *Long*, 2013 WL 1337975, at *2 n.7.

community supervision, we hold that the trial court's admission of the recorded 9-1-1 call into evidence was harmless even if erroneous.[9]

We therefore overrule Johnson's first issue. *See* Tex. R. App. P. 44.2(b).

## IV. CONCLUSION

Having overruled Johnson's two issues, we affirm the trial court's judgment.

/s/ Sue Walker
SUE WALKER
JUSTICE

PANEL: LIVINGSTON, C.J.; WALKER and SUDDERTH, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: October 27, 2016

---

[9]We note that the trial court specifically stated that it was "not relying on the 9-1-1 call for any purposes of evidence . . . . [and] not relying on it for the—the burden for the State to use to satisfy their burden of revocation purposes."